K<small>ATZ</small>M<small>ELINGER</small>
370 L<small>EXINGTON</small> A<small>VENUE</small>, S<small>UITE</small> 1512
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10017
www.katzmelinger.com

| | |
|---|---:|
| Nicole Grunfeld | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | ndgrunfeld@katzmelinger.com |

March 23, 2023

<u>**Via ECF**</u>
Hon. James B. Clark III
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

  Re:  <u>*Vidals Hernandez v. Polly, Inc.. et al.*</u>
      <u>Civil Action No. 22-cv-1244 (ES)(JBC)</u>

Your Honor:

  We are attorneys for plaintiff Rafael Vidals, and write jointly with counsel for defendants Polly Inc. d/b/a Marty Gras Bar & Grill and Martin Nowinski to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims for overtime violations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(4) ("NJWHL"); failure to timely pay wages pursuant to the New Jersey Wage Payment Law ("NJWPL"); and fraudulent filing of information returns pursuant to 26 U.S.C. § 7434.

  Plaintiff and Defendants write to respectfully request that the Court approve the settlement agreement between them, a copy of which is attached hereto as **Exhibit 1**, and allow them to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2) once the settlement amount has been paid

    **1. Summary of Plaintiff's Claims**

  Plaintiff was employed by Defendants as a cook from on or around December 11, 2005 until on or around December 31, 2020. As a cook, Plaintiff's principal job duties included opening the restaurant at the beginning of each work day; preparing food; cleaning the kitchen, bar area, and bathroom; washing dishes; taking out the garbage; and performing any other duties as requested by Mr. Nowinski.

Plaintiff alleges that throughout his employment he regularly worked six (6) days per week, as follows: Mondays through Thursdays from approximately 8:00 a.m. until approximately 4:00 p.m.; Fridays from approximately 8:00 a.m. until approximately 8:00 p.m.; and Saturdays from approximately 8:00 a.m. until approximately 11:00 p.m., for a total of approximately fifty-nine (59) hours worked per week.

Plaintiff claims that Defendants failed to pay him overtime wages at a rate of 1.5 times his hourly rate of pay for all hours worked in excess of forty (40) per week. Specifically, Plaintiff alleges that from in or around 2007 until on or around December 31, 2020, he was paid at a fixed salary of $780.00 per week.

Additionally, Plaintiff alleges that Defendants paid his wages partially in cash, without any withholdings for federal, state, and local taxes, and partially by check with withholdings for federal, state, and local taxes. Plaintiff claims that Defendants issued Internal Revenue Service ("IRS") W-2 Forms to him that only reflected the wages Defendants paid to Plaintiff via check. As a result, Plaintiff alleges that Defendants willfully filed false information returns with the IRS as to Plaintiff's wages in violation of 26 U.S.C. § 7434.

Based on the foregoing, Plaintiff estimates that he is owed approximately $23,897.25 in unpaid overtime wages, plus liquidated damages, interest, the costs of this litigation, and reasonable attorneys' fees. Plaintiff also estimates that he is owed $5,000.00 in damages for fraudulent filing of information returns under 26 U.S.C. § 7434.

## 2. **Defendants' Position**

Defendants vigorously deny Plaintiff's claims and contend that he was paid correctly for all hours worked. Defendants dispute the hours Plaintiff claimed he worked. Moreover, Plaintiff testified that he was only seeking recovery of overtime wages through December 2019 when he had an operation and could no longer work under any circumstances due to disability. This results in a small window of claims from August 2019 through December 2019 based upon this discovery and the Court's Order on Defendants' Motion to Dismiss.

Defendants also allege that it was the parties' understanding and intention that Plaintiff's pay included overtime compensation with a fixed workweek schedule that did not vary. Indeed, Plaintiff was paid the set amount even when he did not work the full schedule or at all in a given week on some occasions. Further, Plaintiff was paid a net amount of $780 per week which was approximately $847.76 gross per week (approximately $40,000 per year). This resulted in payments to Plaintiff in excess of minimum wage and overtime requirements which Plaintiff admittedly never disputed throughout his employment.

Moreover, Defendants contend that Plaintiff's job duties included supervising and directing the work of two subordinate employees who worked under him and therefore he was exempt from overtime requirements in any event.

### 3. The Proposed Settlement Should Be Approved

The parties engaged in extensive settlement discussions and agreed to settle Plaintiff's claims for $28,897.25 to be paid to Plaintiff in one lump-sum payment within sixty (60) days from the expiration of the revocation period set forth in the Agreement. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

#### A. The Settlement Resolves Bona Fide Disputes and is Fair and Reasonable to Plaintiff

To approve an FLSA settlement agreement in the Third Circuit, the court must determine whether "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Davis v. Essex Cty.*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (internal quotations and citations omitted). "In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement 'reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citations omitted). District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) in determining whether a FLSA settlement is fair and reasonable. *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *4 (D.N.J. Sept. 30, 2019). Those factors are: "...(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...." *Id.* (citing *Girsh*, 521 F.2d at 157).

The proposed settlement agreement reflects a reasonable compromise of bona fide disputes regarding Plaintiff's claims, rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel, and the settlement amount of $28,897.25 results in a recovery to Plaintiff of $18,607.00, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff would not prevail on all of his claims after a trial; and the fact that Plaintiff will receive the entire settlement amount shortly after the Court's approval of the settlement agreement.

Moreover, the parties have engaged in extensive negotiations and exchanged information relevant to the claims and defenses in this matter; and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *Cruz*, 2019 WL 4745284, at

\*5 (concluding that the parties appreciated the merits of the case because, *inter alia*, the parties engaged in informal discovery of relevant documents and various arm's-length negotiations). Although the parties hold opposing views on the merit and value of Plaintiff's claims, the arm's length bargaining between such represented parties weigh in favor of finding the settlement reasonable.

    B.  <u>The Settlement Furthers the Implementation of the FLSA</u>

As further explained above, Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims. By reaching a settlement with Defendants, Plaintiff avoids the risks of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails in his claims, attempting to enforce a judgment. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount in one lump sum payment shortly after the Court's approval of the proposed settlement agreement, which is highly favorable to Plaintiff. Specifically, the proposed settlement agreement does not require confidentiality as to Plaintiff's FLSA claims. Further, the proposed settlement agreement contains a mutual general release of claims, which is important to the parties based on their prior relationship and intention to not leave any remaining issue unresolved. Defendants have also agreed to give Plaintiff additional consideration in the amount of $1,605.50 in consideration for the mutual general release of claims. See *Berardi v. Mkt. Basket, Inc.*, No. CV 17-4711 (LDW), 2019 WL 13256740, at \*2 (D.N.J. June 3, 2019) (approving settlement agreement that contained a general release of claims because plaintiff received independent consideration for the release.).

The settlement of litigation ranks "high" in the public policy of this State. See *Pascarella v. Bruck*, 190 N.J. Super. 118, 125 (App. Div.), *certif. denied*, 94 N.J. 600 (1983) (citing *Jannarone v. W. T. Co.*, 65 N.J. Super. 472 (App. Div.), *certif. denied*, 35 N.J. 61 (1961)). This policy is based on "the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone. In recognition of this principle, courts will strain to give effect to the terms of settlement wherever possible." *Dept. of Public Advocate v. N.J. Board of Pb. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985).

    C.  <u>Plaintiff's counsels' fees are reasonable</u>

Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley*, 2012 WL 1019337, at \*9. Under the percentage-of-recovery method, fee awards ranging from 19 percent to 45 percent of the settlement fund have been deemed reasonable. *Id.* at \*12; *see also, Davis*, 2015 WL 7761062, at \*5. Under the proposed agreement, Plaintiff's counsel would recover $987.50[1] as reimbursement for costs and expenses, and $9,303.25 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff, as well as costs and expenses, which is reasonable. *Brumley*, 2012 WL 1019337, at \*12 ("Counsel's request for one-third of the

---

[1] The costs and expenses are as follows: $402.00 for the filing fee, $316.00 for process server costs, and $269.50 for reporter costs, for a total of $987.50.

settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases").

Moreover, a lodestar crosscheck also supports Plaintiff's counsel's fee request. As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 79.20 hours on this matter as follows: Nicole Grunfeld, 25.90 hours; Adam Sackowitz, 1.60 hours; Katherine Morales, 29.10 hours; Eliseo Cabrera, 0.50 hours; Jonathan Trinidad-Lira, 22.10 hours; Jessica Tilton, 2.60 hours. Plaintiff's counsels' hourly rates - $525.00, $435.00, $375.00, $375.00, $325.00 and $150.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (approving an hourly rate of $450.00 per hour for a law firm partner and $375.00 per hour for an associate with approximately 4 years of employment law experience); *see also*, *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (approving an hourly rate of $550.00 per hour for a law firm partner); *Punter v. Jasmin Int'l Corp.,* 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (approving an hourly rate of $300.00 per hour for an associate with "over two years of litigation experience and a substantial portion of his practice relates to representation of employment matters").

Ms. Grunfeld is a partner at Katz Melinger PLLC, where she has worked for more than nine years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters for more than fifteen years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers' Association.

Mr. Sackowitz is the senior associate at the firm. Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than seven years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014.

Ms. Morales is an associate at Katz Melinger PLLC. She earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017; she was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Ms. Morales focuses her practice exclusively on employment law matters.

Mr. Cabrera is an associate at the firm. He earned his B.A from University of California, Berkeley in 2007 and his J.D. from City University of New York School of Law in 2015. Mr. Cabrera has focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017.

Mr. Trinidad-Lira is an associate at the firm, having earned his B.A. from Fordham University in 2019 and his J.D. from Seton Hall University School of Law in 2022. Mr. Trinidad

Honorable James B. Clark III
March 23, 2023
Page 6

Lira has focused his practice on employment law since joining the firm in August 2022. Mr. Trinidad Lira was admitted to practice in New Jersey in 2022 and is pending admission to the New York Bar.

Ms. Tilton is a 2L at Mitchell Hamline School of Law in Saint Paul, Minnesota and worked for the firm as a summer law clerk in the summer of 2022.

The $ 9,303.25 fee sought by Plaintiff's counsel is below Plaintiff's counsel's "lodestar" amount of $32,966.00 and therefore reasonable. As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered all the overtime wages he claimed. Furthermore, Plaintiff avoided the risk of attempting to enforce a judgment against Defendants, if Plaintiff ultimately prevailed in his claims.

Accordingly, Plaintiff and Defendants respectfully request judicial approval of their proposed settlement agreement. As the agreement provides for payment within 60 days of court approval, the parties also respectfully request that the court hold this matter open pending payment, after which the parties will submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(a) (2).

Respectfully submitted,

| | |
|---|---|
| By: */s/ Nicole Grunfeld* | By: */s/ Pauline M.K. Young* |
| Nicole Grunfeld, Esq. | Pauline M.K. Young, Esq. |
| Katz Melinger PLLC | McLaughlin & Nardi, LLC |
| 370 Lexington Avenue, Suite 1512 | 37 Vreeland Ave, |
| New York, New York 10017 | Totowa, New Jersey 07512 |
| T: (212) 460-0047 | T: (973) 890-0004 |
| kymorales@katzmelinger.com | pauline.young@esqnj.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |